K & K WOODWORKING, INC v MICHIGAN EMPLOYMENT
SECURITY COMMISSION

Docket No. 159037. Submitted April 6, 1994, at Grand Rapids. De-
cided August 16, 1994, at 9:25 A.M.

K & K Woodworking, Inc., was determined by the Michigan
Employment Security Commission to have succeeded Timmer &
Brummel, Inc., as employer and to be liable for Timmer's
unpaid contributions due under the Michigan Employment
Security Act. Timmer had surrendered its assets to NBD Bank
as payment of a secured loan extended by NBD to Timmer. K &
K purchased those assets from NBD. The MESC also determined
that K & K could not reduce its liability for Timmer's unpaid
contributions by the amount of the security interest in the
Timmer assets because that interest had been held by NBD, and
not by K & K. The Ottawa Circuit Court, Calvin L. Bosman, J.,
reversed the MESC decision, holding that K & K was not a
successor employer because it acquired Timmer's assets not
from Timmer but from NBD. The MESC appealed.

The Court of Appeals *held:*

1. The lack of a direct transfer of the Timmer assets from
Timmer to K & K does not preclude the MESC from determining
pursuant to MCL 421.15(g); MSA 17.515(g) and MCL 421.41(2)
(a); MSA 17.543(2)(a) that K & K succeeded Timmer as em-
ployer and is liable for the contributions Timmer left unpaid at
the time of K & K's acquisition of the Timmer assets.

2. The MESC erred in construing MCL 421.15(g); MSA
17.515(g) as allowing a reduction for the amount of the secured
interest in the assets of a predecessor only when that secured
interest is owned by the transferee. The proper inquiry under
§ 15(g) is not who held the secured interest, but rather whether
the secured interest was superior to the lien or interest of the
MESC.

Circuit court decision vacated, MESC decision regarding K &

REFERENCES

Am Jur 2d, Unemployment Compensation § 29.
Constitutionality, construction, and application of provision of Un-
employment Compensation Act subjecting to its provisions an
employer purchasing or succeeding to the business of another
employer. 4 ALR2d 721.

K's liability reversed, and case remanded to the MESC for further proceedings.

UNEMPLOYMENT COMPENSATION — SUCCESSOR EMPLOYERS — CONTRIBUTIONS — SECURITY INTERESTS.

A person who purchases seventy-five percent or more of the assets of an employer from a lender to whom a security interest in the assets had been given by the employer and the assets surrendered in payment of the employer's debt to the lender may be deemed to be the successor of the employer and liable for the contributions left unpaid by the employer to the Michigan Employment Security Commission at the time the assets were acquired from the lender; the liability of the purchaser for unpaid contributions is to be reduced by the amount of any security interest in the assets that is superior to the lien or interest of the commission (MCL 421.15[g], 421.41[2][a]; MSA 17.515[g], 17.543[2][a]).

*Varnum, Riddering, Schmidt & Howlett* (by *Joan Schleef*), for K & K Woodworking, Inc.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Duane R. Johnson*, Assistant Attorney General, for the Michigan Employment Security Commission.

Before: MARILYN KELLY, P.J., and R. B. BURNS* and W. E. COLLETTE,** JJ.

PER CURIAM. The Michigan Employment Security Commission appeals as of right from a circuit court order reversing an MESC referee's decision that K & K Woodworking, Inc., is a successor employer to Timmer & Brummel, Inc. We vacate the circuit court's ruling, reverse the MESC's decision regarding K & K's liability, and remand for further proceedings.

On August 28, 1989, Timmer executed an agreement with NBD Bank, agreeing to voluntarily

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1993-6.

** Circuit judge, sitting on the Court of Appeals by assignment.

surrender ownership of its corporate assets and cash to NBD to pay a business loan. Timmer's assets were subject to NBD's first-priority security interest.

On September 6, 1989, K & K purchased Timmer's assets from NBD. The MESC subsequently issued a determination and a redetermination that K & K succeeded Timmer as employer and was liable for Timmer's unpaid contributions and interest.

Following a hearing, an MESC referee on March 13, 1991, affirmed the redetermination, ruling that K & K was not entitled to a reduction in its MESC obligation because it did not hold a security interest in the assets it acquired from Timmer. On appeal, the circuit court reversed the MESC's determination of successorship, holding that K & K was not a successor employer because it had acquired Timmer's assets from NBD. The present appeal followed.

The primary issue presented on appeal is whether K & K can be held liable for Timmer's unpaid contributions and interest pursuant to § 15(g) of the Michigan Employment Security Act, MCL 421.15(g); MSA 17.515(g). At the time of the events in question in this case, § 15(g) provided in pertinent part:

> A person or employing unit, which acquires the organization, trade, business, or 75% or more of the assets from an employing unit, as a successor defined in section 41(2), shall be liable for contributions and interest due to the commission from the transferor at the time of the acquisition in an amount not to exceed the reasonable value of the organization, trade, business, or assets acquired, less the amount of a secured interest in the assets owned by the transferee which are entitled to priority.

Resolution of this issue requires an interpretation of the acquisition requirements in the MESA for an individual, legal entity, or employing unit to become a successor employer. We find that the following definition of "employer" in § 41(2)(a), MCL 421.41(2)(a); MSA 17.543(2)(a), does not require any particular form of acquisition:

> Any individual, legal entity, or employing unit which acquired the organization, trade, or business, or 75% or more of the assets thereof, of another which at the time of the acquisition was an employer subject to this act.

Liberally construing § 41(2)(a), *Grand Rapids Public Schools v Falkenstern,* 168 Mich App 529, 536; 425 NW2d 128 (1988), we hold that the Legislature intended to permit a factual inquiry into the substance of the transaction rather than require any technical form of acquisition. Cf. *Warehouse Indemnity Corp v Arizona Dep't of Economic Security,* 128 Ariz App 504; 627 P2d 235 (1981); *Mason v City Cartage Co,* 124 Ind App 314; 117 NE2d 387 (1954).

This result dovetails harmoniously with other sections of the MESA pertaining to successor employers, such as MCL 421.22(a); MSA 17.524(a), which specifically recognizes that business transfers may occur other than in the ordinary course of trade. See *Nelligan v Gibson Insulation Co,* 193 Mich App 274, 280-281; 483 NW2d 460 (1992). We disagree with the circuit court's view that the phrase "from an employing unit" in § 15(g) requires a direct transfer between the predecessor and successor employer. Nowhere in § 15(g) or § 41(2)(a) is a transfer through an intermediary prohibited. Hence, the lack of direct privity of contract between K & K and Timmer did not

preclude the MESC from finding that K & K was liable under § 15(g) for Timmer's unpaid contributions and interest.

Because it could reasonably be found that the bank acted as a conduit to facilitate the transfer of assets between K & K and Timmer in order to safeguard its own secured interest, we affirm the referee's finding that K & K was the successor employer to Timmer. See *McArthur v Borman's Inc,* 200 Mich App 686, 689; 505 NW2d 32 (1993). In light of this holding, we need not consider the circuit court's ruling that the bank did not fall within the definition of an "employing unit."

Next, although the MESC's interpretation of the formula in § 15(g) for determining plaintiff's maximum liability is entitled to respectful consideration, we are not bound by it and we decline to follow it here. *Ha-Marque Fabricators, Inc v Michigan Employment Security Comm,* 178 Mich App 470, 478; 444 NW2d 190 (1989). We must presume that the Legislature was aware of other laws governing secured transactions, such as Article 9 of the Uniform Commercial Code, MCL 440.9101 *et seq.*; MSA 19.9101 *et seq.,* when it amended the formula in § 15(g) in 1971 PA 231 to add the reduction for "a secured interest in the assets owned by the transferee which are entitled to priority." See *In re Recorder's Court Bar Ass'n v Wayne Circuit Court,* 443 Mich 110, 126; 503 NW2d 885 (1993). We agree with K & K that the phrase "owned by the transferee" modifies the word "assets" because neither the subject matter nor dominant purpose of § 15(g) requires a different interpretation. *People v Pigula,* 202 Mich App 87, 90; 507 NW2d 810 (1993). However, we are not persuaded that this interpretation clarifies how "assets owned by the transferee" should relate to the additional limitations for "a secured interest"

and "which are entitled to priority." Nor are we persuaded that issues of fairness should affect how § 15(g) is interpreted. See *Mercy Hosp v Crippled Children Comm,* 340 Mich 404, 408; 65 NW2d 838 (1954).

We believe it is appropriate to construe § 15(g) in conjunction with the lien rules for the MESC in § 15(e), MCL 421.15(e); MSA 17.515(e), which were in effect at the time K & K acquired Timmer's assets. In so doing, it is apparent that the only secured interests the Legislature intended to be subtracted from the reasonable value of the business or assets that establish the successor employer's maximum liability in § 15(g) are secured interests superior to the MESC's own lien to collect unpaid contributions and interest. Stated otherwise, the Legislature's intent in § 15(g) was to adjust for those assets that the MESC could not reach because of the existence of superior secured interests. In this regard, the transferee (K & K) stands in the same shoes as the transferor (Timmer) in relation to the MESC because the "priority" language in § 15(g) effectively limits the MESC's ability to reach assets to pay for contributions and interest to those assets that it could have reached had there been no sale of the business or assets.

We therefore hold that the referee erred in construing § 15(g) as allowing a reduction for the amount of the secured interest in the assets of a predecessor only when that secured interest is owned by the transferee. The question under § 15(g) is not who held the secured interest, but rather whether the secured interest was superior to the MESC's own lien or interest. Because the referee's interpretation of § 15(g) was contrary to law, we reverse this part of the MESC decision. MCL 421.38(1); MSA 17.540(1); *Schultz v Oakland Co,* 187 Mich App 96, 102; 466 NW2d 374 (1991).

We vacate the circuit court decision, reverse the MESC decision regarding K & K's liability, and remand to the MESC for further proceedings consistent with this opinion. We do not retain jurisdiction.